# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4737 | **DATE** | 1/28/2002 |
| **CASE TITLE** | | Szymanski v. County of Cook | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's and Defendant's Cross-Motions for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion and order, the Defendant's Motion for Summary Judgment [24-1] is GRANTED as to Count I and DENIED as to Count II; the Plaintiff's Motion for Summary Judgment [23-1] is DENIED in its entirety. By separate order, this matter will be set for trial solely on the issue of whether the Defendant retaliated against Plaintiff by segregating her from her coworkers and assigning her as the only Nurse Practitioner required to clean patient files.

(11) ■ [For further detail see attached memorandum opinion and order.]

| | No notices required, advised in open court. | | | 3 | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | FEB 01 200 | | 31 |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | | | |
| | Copy to judge/magistrate judge. | | CLERK | 9-31-02 | | |
| | | | 02 JAN 31 PM 2:57 | date mailed notice | | |
| mds(lc) | courtroom deputy's initials | | FILED FOR TO | | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| EVELYN J.D. SZYMANSKI, | ) | No. 00 C 4737 |
| Plaintiff, | ) | |
| | ) | HONORABLE DAVID H. COAR |
| v. | ) | |
| COUNTY OF COOK | ) | |
| Defendant. | ) | |

DOCKETED
FEB 1 2002

## MEMORANDUM OPINION AND ORDER

Evelyn J.D. Szymanski ("Szymanski") brings a discrimination and retaliation action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq.. Szymanski alleges that her employer, County of Cook, through her supervisor, Dr. Than Win ("Win"), discriminated against her on the basis of race in refusing her overtime and retaliated against her because of her EEOC activity in continuing to assign her work assignments despite her treating physician's recommendations. Before this Court are plaintiff Szymanski's and Defendant County's cross motions for summary judgment on both counts. For the reasons stated below, this Court DENIES Plaintiff's motion for summary judgment in its entirety and GRANTS in part and DENIES in part defendant's motion for summary judgment.

## I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c); Michael v. St. Joseph County, et. al., 259 F.3d 842, 845 (7th Cir. 2001). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P 56(e); Michael, 259 F.3d at 845; Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose the motion for summary judgment, the non-movant cannot rest on the pleadings alone, but must designate *specific facts* in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992). A scintilla of evidence in support of the non-movant's position is insufficient, and the non-movant "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511. Weighing evidence, determining credibility, and drawing reasonable inferences

are jury functions, not those of a judge deciding a motion for summary judgment. <u>Anderson</u>, 477 U.S. at 255, 106 S. Ct. at 2515.

On cross-motions for summary judgment, each movant must individually satisfy the requirements of Rule 56. <u>Great West Cas. Co. v. Rogers Cartage Co.</u>, No. 00 C 6621, 2001 WL 1607608, at *1 (N.D. Ill. 2001); <u>Proviso Ass'n of Retarded Citizens v. Village of Westchester</u>, 914 F. Supp. 1555, 1560 (N.D. Ill. 1996). Thus, the traditional standards for summary judgment still apply even though both parties have moved for summary judgment. <u>Blum v. Fisher and Fisher, Attorneys at Law</u>, 961 F. Supp. 1218, 1222 (N.D. Ill. 1997). This Court thus considers the merits of each cross-motion separately and draws all reasonable inferences and resolves all factual uncertainties against the party whose motion is under consideration. <u>O'Regan v. Arbitration Forums, Inc.</u>, 246 F.2d 975, 983 (7th Cir. 2001). This "Janus-like perspective . . . sometimes forces the denial of both motions," but only where there are material facts in dispute. <u>Buttitta v. City of Chicago</u>, 803 F. Supp. 213, 217 (N.D. Ill. 1992).

## II. Background

The following facts are taken from the parties' Local Rule 56.1(a)(3) and (b)(3) Statement of Material Facts. Szymanski, a Caucasian female, is and has been employed since 1983, at Cook County Hospital as a licensed Nurse Practitioner in the Ambulatory Screening Clinic ("ASC"). ASC is a walk-in clinic that is open 16 hours per day, seven days per week, 364 days a year. ASC takes patients in need of urgent but not emergent care, and it follows the same "triage" protocol as the adult emergency room. Nurse Practitioners generally provide medical services to patients such as perform patient histories and physical exams, order various laboratory tests and x-rays, and formulate plans for patient care and treatment in conjunction with attending

physicians. Typically, Nurse Practitioners in the ASC spend approximately 70-80% of their tour of duty seeing patients.

Dr. Than Win, an Asian male of Burmese decent, became acting director of the ASC in September 1999 and he was promoted permanently to that position in December 1999.[1] As the ASC Director, Win authorizes overtime for physicians and Nurse Practitioners in the ASC, schedules their work assignments, and evaluates their overall performance. The hospital has policies in place regarding the distribution of overtime. The Cook County Hospital Administration Core Manual provides, in pertinent part, that overtime assignments shall be "equitably" distributed among employees who normally and customarily perform such work in their facility, department, or division. The ASC personnel policies provide that each member of the Nurse Practitioner staff be polled in advance to determine their desire to work overtime. ASC policy further provides that "each N.P. will understand that, in any pay period, the limit on overtime allowance will be set at 20 hours" absent exigent circumstances. Finally, hospital policy also provides that all overtime be authorized by an immediate supervisor.

At all relevant times, there were four Nurse Practitioners in the ASC unit: Szymanski, who is white/Polish; Shirley Muse-Blackstone, who is black; Michelle Coleman, who is black; and Cynthia Williams, who is white. Presentacion Cancino ("Cancino"), an Asian female of Filipino decent, is a full-time Nurse Practitioner assigned to the Gastro-Urology ("GU") Clinic. Dr. Ray Paul, Division Chairman and supervisor of the GU Clinic, is Cancino's direct supervisor. Cancino often worked in the ASC after she completed her shift in the GU Clinic.

---

[1]Dr. Elmer Smith was Szymanski's previous immediate supervisor from 1994 until September 1999.

Notwithstanding the hospital policies regarding overtime, from and after his appointment

as Director, Win allowed Cancino to perform virtually all overtime assignments in the ASC.. In

2000 and the latter part of 1999, the ASC was in need of Nurse Practitioners to work overtime on

a daily basis. According to Win and Cancino, the Nurse Practitioners in the ASC did not want to

work overtime.[2] County payroll records reflect that Cancino worked a total of 1,239 hours of

overtime work in the ASC during the period January 1 through December 31, 2000. County

payroll records reflect that Szymanski worked a total of 46 hours of overtime in the ASC during

that same year.[3] Cancino, however, also worked overtime in the ASC before Win was the

Director. In 1999, she worked approximately 984 hours of overtime; approximately 354 of those

hours were worked in the months of September, October, November, and December 1999 (the

months that Win was the acting director of the ASC), and the other 630 of those hours were

worked in January through August 1999 (when Dr. Smith was the ASC Director). In 1999,

---

[2] Szymanski denies that she did not want to work overtime. She testifies that in fact, she repeatedly requested to work overtime during this time period and on each occasion, she was informed that no overtime existed in the ASC. Further, Szymanski alleges that while Dr. Smith, the previous ASC Director, regularly polled employees concerning their desire to work overtime, Win did not. Win testified that while he himself did not poll the Nurse Practitioners, Ms. Morgan, another employee in the ASC, did poll them.

[3] Defendant asserts that all 46 of these hours were on paid holidays that fell on Szymanski's scheduled work day. Nurse Practitioners in the ASC who worked on holidays were paid at a time and a half rate for each hour worked in addition to the paid holiday. Defendant similarly differentiates which hours of overtime were on paid holidays that fell on Szymanski's scheduled work day for the years 1998 and 1999, and asserts that almost all of her overtime were on paid holidays that fell on her regular work day. Szymanski, however, and this Court, are unable to determine from the exhibit to which Defendant cites whether the overtime is exclusively for holidays falling on her regularly scheduled work day. Therefore, since the record does not support Defendant's calculations concerning paid holidays versus overtime pay, this Court does not consider them in deciding these motions for summary judgment.

Szymanski worked 110 hours of overtime. In 1998, Szymanski worked 92 hours of overtime; neither party submits how many hours Cancino worked in 1998. According to Win, Cancino's overtime was not paid from the same budget that paid the Nurse Practitioners in the ASC. Cancino was paid from the GU Clinic budget because that was where she was assigned.[4]

Also beginning in January 2000 until May or June 2000, Dr. Mohammed Khan, the associate director of the ASC, would examine Szymanski's patients after Szymanski had completed her examination. Dr. Khan was responsible for supervising Szymanski's work, and when Szymanski asked Dr. Khan why he was rechecking Szymanski's patients, he told her that it was his signature on the chart. Szymanski testified that the first time her patients were reexamined was in September 1999 when Win became acting director of the ASC. Szymanski testified that she received information from other service physicians that "a file was being started" on Szymanski. It is unclear from the record whether Szymanski was the only Nurse Practitioner whose work Dr. Khan rechecked.

On January 21, 2000, Szymanski filed a charge with the Equal Employment Opportunity Commission alleging discrimination in overtime assignments on the basis of race and retaliation. Specifically, she alleged that she was denied overtime, her work is scrutinized, and she was denied business cards. Win had informed Szymanski that she was not getting any more overtime, including overtime for holidays.[5] On April 3, 2000, Szymanski amended her EEOC

---

[4] Szymanski is unaware whether Cancino's overtime was paid from the same budget as the rest of the Nurse Practitioners in the ASC, but Win testified that Cancino was paid from the GU Clinic budget.

[5] Nurse Practitioners in the ASC who worked on holidays were paid at a time and a half rate for each hour worked in addition to the paid holiday. The policy that requires authorization for all overtime had been in effect since 1997, but Win stated that he started to

charge to include a claim of retaliation. Regarding this claim, Szymanski alleges that her assignment to clean patient education files constitutes reprisal for engaging in EEOC activity.[6]

Patient education files are informational leaflets regarding diseases that are given to patients. These files were kept in two vertical file cabinets in the employee break room. Szymanski testified that other medical providers were complaining because there was food and rodent waste in those files; the files were kept in vertical file cabinets that were open in the back where mice could get in. Szymanski testified that she would clean files and sit quietly in the conference room or in the utility room from 1:00 p.m. to 5:00 p.m. It took Szymanski several weeks to clean the file cabinets the first time, and there was a need to continue cleaning the files three or four months later because people continued to throw food into the files.

In January 2000, Szymanski met with Win and told him that cleaning files was not in her job description. She said that he told her to continue cleaning them because he needed someone to do it. Win testified that he did not assign her to clean files and that he was not aware of why she would be cleaning them. Szymanski was the only Nurse Practitioner in the ASC assigned

---

enforce it in January 2000. Szymanski denies his claim that he "started to enforce" the policy because she was told that she would no longer receive overtime assignments of any kind (either for work in excess of her regular 40 hours or for holidays).

[6] Win did not assign Szymanski to clean the patient files. Rather, shortly before Win became acting ASC Director in September 1999, the outgoing director, Dr. Smith, changed Szymanski's work responsibilities to include cleaning patient education files two days per week, four hours per day. According to Szymanski, this was done in retaliation for her filing an EEOC charge in May 1999. This charge was a result of a fellow employee harassing Szymanski; after she filed the complaint, there were no further incidents with that employee.

to clean the patient education files.[7] She was never supervised when she was cleaning the files.

On May 30, 2000, Szymanski was admitted to LaGrange Hospital in Chicago, Illinois for treatment of sinusitis, fever, rash, and vertigo. She was prescribed antibiotic medications for six weeks following her discharge from the hospital. On June 15, 2000, Szymanski returned to work with her doctor's recommendation that "patient advised not to clean patient files because it affects her health." Win, aware of Szymanski's doctor recommendation, did not order Szymanski to cease cleaning the patient files in the conference room. Win's explanation for not relieving Szymanski of her cleaning duties was that, as a doctor, he doubted the medical restriction, and after consulting Szymanski's treating physician he doubted she would get sick. He also testified that because of her previous EEOC activity, he wanted to "maintain the status quo" and not "generate any fuel to the fire." Win further admitted that, although physicians and Nurse Practitioners are subject to an annual written performance evaluation, he has not evaluated Szymanski's work performance since his appointment as Director of ASC because of the pending litigation.[8]

On June 26, 2000, Szymanski filed another EEOC charge on the basis of race and retaliation. In this charge, Szymanski contends that she has been assigned to "health risk

_____

[7] Perhaps as a result of this assignment, Szymanski testifies that three admissions clerks who were seated at a table referred to Szymanski as a "Polish cleaning lady" one time. This was the only disparaging comment made to Szymanski concerning her national origin, and none of the clerks serves in a supervisory capacity. Szymanski admitted that she never told Win about this incident because she felt so ashamed of what had happened.

[8] Szymanski was not the only Nurse Practitioner that Win did not evaluate; Win testified that he did not evaluate any of the Nurse Practitioners, and that he only evaluated the physicians.

housekeeping duties not covered in my job description" in retaliation for her EEOC activities. On June 27, 2000, Szymanski filed a complaint with the Illinois Department of Labor, Division of Safety Inspection and Education, alleging that she has been exposed to rodent waste as a result of her assignment to clean patient education files. On September 28, 2000, the Department of Labor issued a Citation against the hospital relative to the presence of "vermin" in the conference room of the ASC.

### III. Discussion

Szymanski's action consists of a reverse discrimination claim and a retaliation claim. Szymanski claims that Win distributed overtime in the ASC in a discriminatory fashion; namely, that because Szymanski is white and not Asian, he refused her overtime, yet he allowed Cancino, who is Asian, to work practically all of the overtime. Szymanski also claims that the Defendant retaliated against her by continuing to deny her overtime, by segregating her from her coworkers and reducing her to clean rodent waste from patient education files, and by causing her to be ridiculed by her coworkers.

Szymanski, having no direct evidence to support these assertions, must proceed on both counts under the burden-shifting method articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06 (1973).

Under this burden-shifting approach, a plaintiff bears the initial burden of establishing a *prima facie* case of intentional discrimination or retaliation. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 505 (1993); Hall v. Bodine Elec. Co., 276 F.3d 345, (7th Cir. 2002); Miller v. Am. Fam. Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000); Nawrot v. CPC Int'l, No. 00C2849, 2002 WL 27528, at *7 (N.D. Ill. Jan. 11, 2002). Once the plaintiff establishes a *prima facie* case,

a legal, rebuttable presumption of discrimination arises, and a burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. Nawrot, 2002 WL 27528, at *7. If the employer satisfies that burden, the presumption of discrimination extinguishes, and the burden shifts back to the plaintiff to persuade the trier of fact either directly that a discriminatory reason more likely motivated the action or indirectly that the employer's articulated reason for the employment action is unworthy of credence and is but a mere pretext for intentional discrimination. Id.

At all times, the ultimate burden of persuasion remains with the plaintiff. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-56 (1981). In the third stage, the plaintiff's burden under the McDonnell Douglas framework merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination or retaliation. Id. at 253. At this point, the McDonnell Douglas framework no longer is relevant; the third step simply returns the plaintiff to her original position, that of proving intentional discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000); see also Hicks, 509 U.S. at 510 (stating that the McDonnell Douglas burden-shifting framework "simply drops out of the picture").

*A. Reverse discrimination claim*

    *1. Prima facie case*

Ordinarily, to state a *prima facie* case of race discrimination in an employment conditions case, Szymanski must allege that she: (1) is a member of a protected class; (2) performed her job to her employer's satisfaction; (3) was subjected to an adverse employment action despite her performance; and (4) was treated less favorably than other similarly situated non-white individuals. See, e.g., McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). The Seventh

-10-

Circuit, however, has stated that in so-called "reverse discrimination" cases, white (or male) plaintiffs must show other "background circumstances" in lieu of their inability to satisfy the first element. Mills v. Health Care Serv. Corp., 171 F.3d 450, 454 (7th Cir. 1999).

The Mills court identified several kinds of background circumstances tests a plaintiff could use to state a *prima facie* case in a reverse discrimination case. Szymanski proceeds on the test articulated in Harding v. Gray, 9 F.3d 150, 152-53 (D.C. Cir. 1993). In Harding, the court articulated two categories of evidence that satisfy the background circumstances test: (1) evidence indicating that the particular employer has some reason or inclination to discriminate invidiously; or (2) evidence indicating that there is something "fishy" about the facts of the case. Mills, 171 F.3d at 455 (citing Harding, 9 F.3d at 153). Something can be "fishy" if a plaintiff presents evidence that the employer's actions "departed from the usual procedures in an 'unprecedented fashion.'" Id.

Here, this Court believes that Szymanski has stated a *prima facie* case of discrimination under this background circumstances test. Szymanski, who is white, has established that Win, who is Asian, denied her overtime and told her that there was no overtime available and yet he allowed Cancino, who is also Asian, to work practically all of the overtime in the ASC, in violation of hospital policies. The Defendant argues that Szymanski fails to satisfy the third and fourth prong of the *prima facie* test. Defendant argues that Szymanski has not suffered any adverse action, and that she and Cancino are not similarly situated employees.

This Court, however, disagrees. Denial of overtime has a tangible economic effect, and thus normally constitutes an adverse action. Moore v. Henderson, 174 F. Supp. 2d 767, 776 (N.D. Ill. 2001). Further, Cancino is a similarly situated non-white Nurse Practitioner who was

treated more favorably than Szymanski. Defendant's argument that the only employees that can be considered to be similarly situated with Szymanski are the other four Nurse Practitioners in the ASC is absurd; this definition would find that only employees with the same job title are similarly situated. The fact that Cancino works in the GU Clinic full-time rather than in the ASC is irrelevant for the purposes of determining whether she and Szymanski are similarly situated. Cancino competed against Szymanski for overtime hours in the ASC, she performed the duties of an ASC Nurse Practitioner during those hours as Szymanski would, and she needed Win's acquiescence to work those hours, like Szymanski does. Because this Court finds that Szymanski established a *prima facie* case of discrimination, the burden now shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the employment action.

### 2. Legitimate, nondiscriminatory reason

Defendant articulates two reasons why Cancino worked practically all of the overtime hours in the ASC: (1) that Szymanski and the other Nurse Practitioners did not desire to work overtime; and (2) that because Cancino's overtime was paid out of the GU Clinic budget and not the ASC budget, Win was receiving Cancino's services in the ASC "for free."

### 3. Pretext

Now that the Defendant has articulated legitimate, nondiscriminatory reasons, Szymanski may establish that the Defendant's offered reasons are pretext for discrimination by providing either direct evidence indicating that the Defendant was "more likely than not motivated by a discriminatory reason," or indirect evidence showing that the Defendant's stated reasons are not credible. Alexander v. Wisconsin Dep't of Health and Family Servs., 263 F.3d 673, 682 (7th Cir. 2001) (citations omitted). Because she does not present any direct evidence that the

-12-

Defendant's stated reasons for denying her overtime and were pretext, Szymanski must rely on indirect evidence. Id. Creating a triable pretext issue with indirect evidence is a difficult task which may be accomplished in one of two ways: (1) Szymanski must show either that the Defendant lied about why it took the adverse action that it did; or (2) that the Defendant's stated reasons for denying Szymanski overtime while allowing Cancino to work overtime have no basis in fact. See id. at 683 (citing Guerrero v. Ashcroft, 253 F.3d 309, 313 (7th Cir. 2001). In addition, the Supreme Court explicitly has recognized that courts "are not a super-personnel board and that we may not punish an employer for choices that constitute business decisions alone, no matter how unwise or mistaken they may seem to us." Reeves, 530 U.S. at 144; see also Guerrero, 253 F.3d at 313.

When deciding a grant of summary judgment, however, the only question before the court is whether the plaintiff has provided evidence from which a rational trier of fact could infer that the employer's stated reasons for taking the adverse action were lies. Guerrero, 253 F.3d at 313; see also Bell v. E.P.A., 232 F.3d 546, 550 (7th Cir. 2000) ("If the only reason an employer offers for [taking adverse action against] an employee is a lie, the inference that the real reason was a forbidden one . . . may reasonably be drawn. This is the common sense behind McDonnell Douglas.") (citations omitted).

Here, Szymanski creates a genuine issue of fact as to whether Defendant's reason that Szymanski did not want overtime is false. She provides testimony that she did wish to work overtime and that she repeatedly requested to work overtime. She also provides a memo in which Win acknowledged her willingness to work on at least one holiday. The Defendant argues that Szymanski's history of not working much overtime is further proof that she did not desire to

work overtime. This Court, however, believes that it is just as possible that Szymanski's (and Cancino's) overtime history indicate an unfairness in distribution of overtime rather than Szymanski's lack of desire to work.

Even though Szymanski creates an issue of fact as to the first reason, she still cannot survive summary judgment because that reason is not the only one the Defendant offers. Szymanski fails to establish that the Defendant's second reason, that the ASC did not have to pay for Cancino's overtime, is a pretext. Szymanski does not offer any evidence that this reason is a lie. Her arguments that Defendant's reason "is also pretextual and without merit" and that it is "entirely irrelevant to this case" are conclusory and unhelpful. In fact, the Seventh Circuit has acknowledged the merit of this reason, see Aviles v. Cornell Forge Co., 183 F.3d 598, 604 (7th Cir. 1999) ("Trying to save money is a legitimate, nondiscriminatory reason to [refuse to approve] overtime.").

In her Local Rule 56.1(b)(3)(A) Response to Defendant's Statement of Undisputed Facts, Szymanski responds that she is unaware, and the record is devoid of any documentary or other evidence that demonstrates Cancino was, or was not, paid from the same budget as the other Nurse Practitioners in the ASC. Szymanski, however, perhaps does not understand that she has the burden of persuasion, not the Defendant. Under the case law the Defendant merely has to articulate a legitimate nondiscriminatory reason for the adverse action – it does not have to offer proof that this reason is true. Rather, it is up to Szymanski not only to cast doubt on the veracity of the Defendant's reason, but to also prove that the real reason was discrimination.

Szymanski does not meet her burden. She has presented no evidence from which it can be inferred that the Defendant's stated reason for denying Szymanski overtime was a pretext for

-14-

discrimination. In fact, that Cancino received the bulk of the overtime prior to Win's appointment as the ASC Director, clearly cuts against an inference of discrimination by Win. This Court, therefore, GRANTS the Defendant's motion for summary judgment on Szymanski's discrimination claim.

## B. Retaliation Claim

Szymanski's second claim is that the Defendant retaliated against her for her EEOC activity in violation of Title VII. As with her discrimination claim, Szymanski proceeds under the McDonnell Douglas framework applicable to retaliation claims.

### 1. Prima facie case

In order to prevail on a claim of retaliation, a plaintiff must first demonstrate a *prima facie* case by showing that: (1) she engaged in statutorily engaged expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action. Miller, 203 F.3d at 1007. The Defendant argues that Szymanski cannot establish a *prima facie* case of retaliation because she fails to show that there was an adverse job action against her and, in the alternative, that she cannot show there was a causal link between her EEOC filing and any adverse action.

Although the Seventh Circuit defines adverse employment action quite broadly, not everything that makes an employee unhappy is an actionable adverse action. Bell, 232 F.3d at 555; Smart v. Ball State Univ., 89 F.3d 437, 440 (7th Cir. 1996). For an employment action to be actionable, it must be a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. (citing Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998)).

Szymanski complains of three "adverse actions": (1) she continuously was denied overtime; (2) she was segregated from her coworkers and was the only Nurse Practitioner assigned to clean the patient education files; and (3) she was ridiculed and referred to as the "Polish Cleaning Lady" by her coworkers. This Court finds that, as to her second reason, Szymanski has articulated a genuine issue of material fact whether she suffered an adverse job action, and whether a sufficient causal link exists between her EEOC activity and that adverse action.[9]

Szymanski's initial assignment in September 1999 to clean the patient education files in and of itself may not constitute an adverse action under Smart and its progeny. See e.g., Sweeney v. West, 149 F.3d 550, 554 (7th Cir. 1998) ("It is not unusual for any employee to have been treated differently in some fashion."). The issue of fact in this case, however, is not as to the initial assignment by Dr. Smith. Rather, it concerns Win's decision not to relieve Szymanski of this assignment *because of her previous EEOC activity* even after her doctor recommended that she not clean the files because it affected her health. Thus, if cleaning the patient files posed a health risk to Szymanski, and if "but for" her EEOC activity Win would have told her not to clean the files anymore, a jury could find that was an adverse action that constituted retaliation. This Court, therefore, DENIES both Szymanski's and the Defendant's motions for summary judgment on the retaliation count.

---

[9] Szymanski's first complaint fails because even though denial of overtime is normally an adverse action, because it was a continuous denial, she would not be able to show a nexus between her EEOC filing and the denial of overtime. In other words, for the reasons discussed in Part A, supra, Szymanski could not show that "but for" her EEOC activity, she would have received overtime. See Johnson v. Univ. of Wisconsin-Eau Claire, 70 F.3d 469, 479 (7th Cir. 1995).
Szymanski's third complaint does not constitute an adverse action because the remark, which was made only once by her coworkers and not brought to Win's attention, was a minor inconvenience that may well have made Szymanski unhappy but did not rise to the level of adverse action.

## IV. Conclusion

For the foregoing reasons, the Plaintiff's motion for summary judgment is DENIED and the Defendant's motion for summary judgment is GRANTED as to Count I and DENIED as to Count II. By separate order, this matter will be set for trial solely on the issue of whether the Defendant retaliated against Szymanski by segregating her from her coworkers and assigning her as the only Nurse Practitioner required to clean patient files.

**Enter:**

David H. Coar

**David H. Coar**

**United States District Judge**

**Dated: January 28, 2001**